**In re JOHNSON, Donald Wayne and Johnson, Carol Williams, Debtors.**

**Baxter, Barnee, Chapter 13 Trustee, and First Bank of Georgia, Movants,**

v.

**Johnson, Donald Wayne and Johnson, Carol Williams, Respondent.**

**In re Roberts, Thomas Lee and Roberts, Julia Bradshaw Debtors.**

**Baxter, Barnee, Chapter 13 Trustee, Movant,**

v.

**Roberts, Thomas Lee and Roberts, Julia Bradshaw Respondents.**

**Nos. 05–13992, 05–14114.**

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

July 21, 2006.

Lee Ringler, Augusta, GA, for Debtors.

## ORDER

JOHN S. DALIS, Bankruptcy Judge.

Barnee Baxter, the Chapter 13 Trustee (the "Trustee"), objects to the confirmation of both of the above-named cases. In addition, the First Bank of Georgia (the "Bank") objects to the plan filed by Donald and Carol Johnson (the "Johnsons") for substantially similar reasons. These matters are core proceedings over which the Court has jurisdiction under 28 U.S.C. § 157(b)(2)(L).

For the reasons stated herein, the objections to confirmation are sustained, and the cases are continued for the debtors in both cases (collectively, the "Debtors") to: (1) amend Form B22C as necessary; and (2) file modifications of their Chapter 13 plans consistent with the conclusions of law that follow.

## FINDINGS OF FACT

The relevant facts are similar in each of these two cases. Both cases were filed after October 17, 2005, and therefore are subject to the amendments to the Bankruptcy Code contained in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Debtors have household incomes that exceed the applicable median family incomes for the State of Georgia.[1] Thomas and Julia Roberts (the "Robertses") are a household composed of two (2) persons, with an annual income of $56,221, which exceeds the applicable median income of $47,327. The Johnsons are a household composed of three (3) persons, with an annual income of $95,854. The applicable median income is $51,545. Neither case presents a presumption of abuse under 11 U.S.C. § 707(b)(2)(A)(i).

### I. THE DEBTORS' "DISPOSABLE INCOME": FORM B22C AND SCHEDULES I & J

Following the passage of BAPCPA, debtors are required to include Form B22C with their petition. This form contains the calculations at 11 U.S.C. §§ 707(b)(2), the so-called means test. For debtors with above-median incomes, the sum of these calculations establishes "disposable income." 11 U.S.C. § 1325(b)(1)-(3).

---

1. *See* CENSUS BUREAU MEDIAN FAMILY INCOME BY FAMILY SIZE (ADJUSTED), available at *http://www.usdoj.gov/ust/eo/bapcpa/bci_data/* *median_income_table.htm* (last visited on June 21, 2006).

In both of these cases, there are discrepancies between the Debtors' B22C Forms and budget contained in their Schedules I and J.

The Robertses' Schedules I and J yield a "monthly net income" of $267.33. However, Form B22C indicates a deficit: monthly disposable income equals –($958.63). In their Chapter 13 plan, the Robertses propose to pay $270.00 per month for a minimum of 36 months. The Trustee objects to a $550.00 per month expense for medical costs over and above their health insurance deduction of $106.29 per month.

The Johnsons' Schedules I and J indicates a monthly net income in a deficit of –($104.50). Form B22C indicates an even greater deficit. On it, their monthly disposable income equals –($795.51). In their Chapter 13 plan, the Johnsons propose to pay $303.00 per month for a term of 60 months. The Trustee objects to certain monthly expenses, namely: (1) repayments of loans taken from their 401(k) retirement savings accounts; (2) increased contributions to their 401(k) retirement savings accounts; (3) and auto loan and lease payments of approximately $1,300 per month for three vehicles.

Both of the proposed plans would yield *pro rata* dividends to unsecured creditors. The Robertses' plan would yield at most a 10% dividend (Trustee's Exhibit A), and maybe as little as 1% (Trustee's statements at the confirmation hearing). The Johnsons' plan would yield, at most, a 1.18% dividend (Trustee's Exhibit A).

The Trustee objects to using Form B22C as the absolute criterion for determining disposable income, where Schedules I and J indicate net income available for the benefit of creditors. "Schedules I and J must be reviewed and compared, necessarily, to the pre-filing data of the credit counseling and means test information [i.e., Form B22C] to determine whether the proposed Chapter 13 plan can be confirmed." Trustee's Brief *re* Roberts ("Trustee's Brief") at 3 *citing* 11 U.S.C. §§ 1325(a)(1) & 1325(a)(1),(a)(3), (a)(7),(b)(1)(B), & 101(10A).

## II. APPLICATION OF TAX REFUNDS TO "DISPOSABLE INCOME" CALCULATIONS

Complicating both of these cases is the issue of tax refunds. In 2005, the Debtors received tax refunds for their 2004 tax returns. The Trustee contends that the Debtors should have included those refunds *as income* on Form B22C and Schedule I, but did not.

The Trustee is concerned that these Debtors are withholding more than their actual annual tax obligations, and will continue these patterns of over-withholding throughout the lives of their plans. His concern is justified. Evidence presented at their respective hearings establishes that both of these Debtors have historically permitted taxing authorities to over-withhold their income taxes.

The Debtors deny any bad faith. Relying on specific language in §§ 707(b) and 1325(b), they argue that they are not required to list the refunds as income.

## ANALYSIS

Aside from matters that pertain only to one case or the other, both cases raise two important legal issues, namely: (I) whether § 1325(b) conclusively determines the amount of net income available for creditors; and (II) how to correct patterns of over-withholding of federal income taxes, so that disposable income is calculated accurately.

## I. CALCULATING "DISPOSABLE INCOME" IN GOOD FAITH

The Trustee objects to confirmation of these cases on the grounds that the Debt-

ors (1) do not contribute all their disposable income to funding their plans as required by § 1325(b), and (2) have failed to propose their plans in good faith as defined by § 1325(a)(3). According to the Trustee, the Debtors' actual incomes and actual expenses, reflected on their Schedules I and J, indicate that they are able to pay more to their unsecured creditors. The Debtors argue that § 1325(b) conclusively determines the amount of disposable income available for creditors. They contend that § 1325(a)(3) requires no additional inquiry into the sufficiency of their plan payments.

The enactment of BAPCPA did not abolish the requirement that a "plan... [be] ...proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). To the contrary, BAPCPA extends the requirement of good faith to the filing of the petition. 11 U.S.C. § 1325(a)(7). However, I find that BAPCPA does alter the test of good faith with respect to the sufficiency of income committed to the plan.

### a. The *Kitchens* Test and "Disposable Income" under BAPCPA

█ Although the Code does not explicitly define the term "good faith," the inquiry into good faith is "broadly speaking... whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [Chapter 13] in the [proposed plan]." *Kitchens v. Ga. RR Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885, 888 (11th. Cir.1983) (*citing* 9 COLLIER ON BANKR., ¶ 9.20, at 319 (L. King 14th ed.1978)).

In *Kitchens,* the Eleventh Circuit Court of Appeals adopted a "totality of the circumstances" test for determining the good faith of a Chapter 13 debtor. To guide this analysis, the Eleventh Circuit provided a list of 13 non-exhaustive factors:

1. the amount of the debtor's income from all sources;

2. the living expenses of the debtor and his dependents;

3. the amount of attorney's fees;

4. the probable or expected duration of the debtor's Chapter 13 plan

5. the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

6. the debtor's degree of effort

7. the debtor's ability to earn and the likelihood of fluctuation in his earnings

8. special circumstances such as inordinate medical expenses;

9. the frequency with which the debtor has sought relief under the [Bankruptcy Code];

10. the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of the same, in dealing with his creditors;

11. the burden which the plan's administration would place upon the trustee;

12. the substantiality of repayment; and

13. the potential nondischargeability of debt in a Chapter 7 proceeding.

*Kitchens,* 702 F.2d at 888–89.

With the passage of BAPCPA, some of these factors are subsumed by specific provisions of § 1325(b). I find that the amendments to the disposable income test at § 1325(b) narrow the scope of the good faith inquiry.

Since before BAPCPA, § 1325(b) has prevented me from confirming a Chapter 13 plan over the objection of a trustee or unsecured creditor if the debtor did not commit "all of the debtor's projected dis-

posable income" to funding it. 11 U.S.C. § 1325(b)(1)(B).

After Congress adopted § 1325(b) in the Bankruptcy Amendments and Federal Judgeship Act of 1984, courts divided over its relation to § 1325(a)(3). Some courts reacted to the addition of § 1325(b) by removing factors related to the sufficiency of disposable income from their totality of the circumstances tests. *See, e.g., Noreen v. Slattengren,* 974 F.2d 75, 76 (8th Cir. 1992); *In re Smith,* 848 F.2d 813, 820 (7th Cir.1988). In the wake of BAPCPA, some additional courts and commentators have recognized that § 1325(b), rather than § 1325(a)(3), controls whether a debtor has committed sufficient income to a Chapter 13 plan. *In re Barr,* 341 B.R. 181 (Bankr. M.D.N.C.2006), 8 COLLIER ON BANKRUPTCY ¶ 1325.08[1] (15th ed. rev.2005).

Section 1325(b), as amended by BAPC-PA, provides in pertinent part that:

(1) If the trustee or the holder of an allowed, secured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) ...

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

(2) For the purposes of this subsection, the term "disposable income" means the current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child)

less amounts reasonably necessary to be expended—

(A) (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

(ii) for [allowed] charitable contributions...; and

(B) if the debtor is engaged in business, for [allowed business expenses].

(3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than [the applicable median income for a households the size of the debtor's].

11 U.S.C. § 1325(b).

■ I find that § 1325(b), as amended by BAPCPA, does alter the good faith inquiry under § 1325(a)(3) in several important ways. The changes do not entirely eliminate a good faith inquiry into the sufficiency of income. However, they do narrow the scope of judicial discretion.

■ Not all sources of income need be committed to a Chapter 13 plan. By specifically excluding some income from the disposable income analysis, BAPCPA recasts the totality-of-the-circumstances test set forth in *Kitchens,* the first factor of which required consideration of "the amount of the debtor's income from all sources." *Kitchens,* 702 F.2d at 888–89.

■ Disposable income does not include proceeds from "child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child." 11 U.S.C. § 1325(b)(2).

Additionally, § 1325(b) treats "current monthly income" as the input for determining "disposable income." By definition, current monthly income excludes "benefits received under the Social Security Act" and also certain payments to victims of terrorism, war, and crimes against humanity. 11 U.S.C. § 101(10A)(B).

Debtors are also permitted to shelter certain contributions to employee benefit plans (EBPs). "[A ]ny amount" that is either "withheld by" or "received by" a debtor's employer for qualifying EBPs, deferred compensation plans, tax-deferred annuities, or state-law-regulated health insurance plans "shall not constitute disposable income, as defined in section 1325(b)(2)." 11 U.S.C. § 541(b)(7)(A) & (B) (emphasis added).

Among the qualifying programs are any "employee benefit plan[s] ... subject to Title I of the Employee Retirement Income Security Act of 1974" ("ERISA"). *See* 11 U.S.C. § 541(b)(7)(A)(i)(I) & (B)(i)(I). This includes EBPs subject to 26 U.S.C. § 401(k) ("401(k) plans"). *See* 29 U.S.C. §§ 1002(3)(defining "employee benefit plan"), 1003(a) (defining ERISA's coverage). So long as a debtor's contributions are within the limits legally permitted by the EBP, "any amount" of this contribution is exempted from disposable income.

Furthermore, in addition to sheltering EBP contributions, the Code also protects repayments of loans from EBPs, including loans from 401(k) plans. Section 1322(f) provides:

A plan may not materially alter the terms of a loan described in section 362(b)(19) [i.e., a loan from a qualifying employee benefit plans or retirement savings accounts], and any amounts required to repay such loan shall not con-

stitute 'disposable income' under section 1325.

11 U.S.C. § 1322(f).

Debtors are not required to contribute income from any of these sources to their Chapter 13 plans. Consequently, in determining good faith under § 1325(a)(3), I may not consider them.

■ In regard to the Johnsons' plan, the Trustee objects to certain monthly payroll deductions they make to (1) fund and (2) repay loans from their respective EBPs. According to the Johnson's Schedule I, Donald Johnson contributes $407.53 per month to a 401(k) plan, and also pays $431.93 per month to repay loans he took from this plan. Carol Johnson contributes $139.26 per month to her 401(k) plan, and also pays $150.00 per month to repay loans she took from it. The Johnsons' 401(k) payroll deductions total $1,128.72 per month. Sections 541(b)(7) and 1322(f) both plainly state that these contributions "shall not constitute disposable income." Congress has placed retirement contributions outside the purview of a Chapter 13 plan.

■ Debtors may fund 401(k) plans in good faith, so long as their contributions do not exceed the limits legally permitted by their 401(k) plans. Here, the Trustee does not assert that the Johnson's contributions exceed the amounts allowed by their respective 401(k) plans. Therefore, the Trustee's specific objection to the Johnsons' 401(k) contributions is overruled.

**b. Calculating "Current Monthly Income" in Good Faith**

Although § 1325(b), as amended by BAPCPA, subsumes certain traditional "totality of the circumstances" factors, it also introduces novel means to evade "the provisions, purpose, or spirit" of Chapter

13 not contemplated by the 11th Circuit's totality-of-the-circumstances test.

Because § 1325(b) treats "current monthly income" (CMI) as the input for determining "disposable income," debtors are only required to consider income earned during the applicable six-month "look-back" period. The definition section of the Code provides in pertinent part that:

The term "current monthly income"—

(A) means the average monthly income from all sources [but as limited by § 101(10A)(B)] that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6–month period ending on—

(i) the last date of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or

(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii) . . .

11 U.S.C. § 101(10A)(A).

This creates an opportunity for savvy debtors to artificially reduce CMI by intentionally avoiding pre-petition income: "The debtor might take an unpaid leave of absence, quit a job, or refuse overtime the [sic] formerly welcomed." Culhane & White, *Catching Can–Pay Debtors: Is the Means Test the Only Way?*, 13 Am. Bankr. L. Rev. 665, 689 (2005). Alternatively, an above-median-income debtor may file for bankruptcy in good faith after a period of involuntary unemployment or underemployment. *See, e.g., In re Kibbe*, 342 B.R. 411 (Bankr.D.N.H.2006).

■ A debtor's intent and purpose in failing to procure pre-petition income is a factor for consideration when determining a debtor's good faith. However, this is only one factor. As the test for good faith remains open-ended, I will consider the issue as it arises on a case-by-case basis. In neither of these cases has the Trustee alleged that the Debtors intentionally reduced income during the six months prior to filing.

### c. Reasonably Necessary Expenses of Above–Median–Income Debtors

Besides income, the *Kitchens* test also requires that I consider "the living expenses of the debtor and his dependents." *Kitchens*, 702 F.2d 885, at 888–89. However, amended § 1325(b) also narrows this element of the good-faith inquiry—at least with respect to above-median-income debtors.

Section 1325(b) now requires above-median-income debtors to calculate their "reasonable necessary expenses" according to the mathematical formula at § 707(b)(2). 11 U.S.C. § 1325(b)(3). The same test that determines whether a presumption of abuse arises in Chapter 7 also establishes disposable income for above-median-income debtors filing under Chapter 13.

The § 707(b)(2) calculation inputs CMI and deducts various expenses. The Bankruptcy Code has traditionally recognized some of these deductions—for example, secured debts, administrative expenses, and charitable contributions. However, BAPCPA also introduced deductions based on the Internal Revenue Service's Allowable Expenses (the "IRS Allowances").

The IRS Allowances were developed to determine a taxpayer's ability to pay tax liabilities. They divide into three broad categories: the IRS National Standards for food, housekeeping supplies, apparel, etc., the IRS Local Standards for housing

and transportation expenses; and the IRS Allowances for Other Necessary Expenses:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides... (etc.).

11 U.S.C. § 707(b)(2)(A)(ii)(I).

In each of these two cases, the Trustee has objected to the Debtors' calculations with regard to the IRS allowances.

### 1. The IRS Standard Allowances

Unlike the allowance for Other Necessary Expenses, the IRS National and Local Standards (the "Standard Allowances") are defined by Labor and Census Bureaus' statistics rather than by actual individual need. The Standard Allowances might therefore seem to reflect amounts that Congress deems reasonably necessary regardless of a debtor's actual expenses. However, § 707(b)(2) treats the National and Local Standards very differently.

The IRS National Standards generally serve as both a floor and a ceiling. The debtor simply enters the standard deduction for "food, clothing, household supplies, personal care, and miscellaneous" expenses into Form B22C (line # 24). There is a narrow exception: debtors who can demonstrate "reasonable necessity" may adjust the allowances for food and clothing by up to five percent (5%). 11 U.S.C. § 707(b)(2)(A)(ii)(I). But, in general, the IRS National Standard is a standard deduction based solely on the size of the household.

In contrast, the Local Standards provide only a floor. Although § 707(b)(2) does reflect the IRS Local Standards for monthly housing and transportation expenses, debtors may deduct more based on their actual payments for debts secured by their real estate and vehicles.

■ With regards to the IRS standard deductions, § 707(b)(2) provides: "[n]otwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." 11 U.S.C. § 707(b)(2)(A)(ii)(I). The debtor must reduce the relevant allowances under the IRS Local Standard by her actual (average monthly) payments on mortgages and auto loans. *See In re Hardacre*, 338 B.R. 718, 725–27 (Bankr.N.D.Tex.2006).

However, actual payments on secured debt are not left unaccounted for. Instead, the debtor is entitled to deduct her actual (average monthly) payments separately. 11 U.S.C. § 707(b)(2)(A)(iii).

Section 707(b)(2) provides in pertinent part:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each of the 60 months following the date of the petition; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependants, that serves as collateral for secured debts;
>
> divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii).

■ Although the Code's formula is somewhat obtuse, Form B22C provides relatively clear instructions. Because Form B22C is the practical means by

which debtors compute "disposable income," I find that its instructions are entitled to considerable deference.

On this form, the debtor's housing and transportation budgets are each separately divided into itemized deductions for (1) upkeep and (2) debt repayment. So, for example, the housing deduction includes a standard allowance for "non-mortgage expenses" like utilities and maintenance (line #25A), separate from "mortgage/rent expenses" (line #25B).[2] Transportation expenses are treated more or less identically: operating expenses (line #27) are separated from expenses for leases/financing (lines ##28–29). Debtors may take deductions up to two vehicles per household.[3]

A close examination of Form B22C reveals that the IRS Local Standards, despite their name, are not actually standard allowances. Although the Code incorporates the Local Standards, it does not actually place specific limits on debts secured by vehicles or real estate. Instead, debtors must reduce the allowances permitted under the Local Standards by the amount of their payments on relevant secured debts. If a secured debt payment is less than the allowance, the debtor deducts the difference. If it is more, then the debtor deducts nothing for the IRS Local Standards. However, the debtor gets to separately deduct payments on her secured debts (lines ##47–48). Because the deduction for secured debts is not capped by the IRS Local Standards, those standards really only provide a floor.

Whether the good faith requirement at § 1325(a)(3) sets an upper limit on secured debt, or (as the Johnsons contend) debtors may "deduct their total average monthly secured debt payments regardless of need or reasonableness," is not an issue that is properly before me. Johnsons' Brief, at 8.

Here, the Trustee objects to the Johnsons' payments on car loans and leases. His specific objection is not that their monthly payment on their single auto loan is too great. The Johnsons' pay just $319.00 per month on the one loan secured by a vehicle. Form B22C (lines ##28 & 47). That is less than the $475.00 per month to which they are entitled under the IRS Local Standard for "ownership expenses" on a primary vehicle.

■■■ The Trustee does not object to this loan, but rather to the two additional vehicles that the Johnsons lease. The Johnsons have a total of three vehicles:

(1) a 2003 Kia Spectrum that they finance ($319.00/month);

(2) a 2003 Ford Expedition that they lease ($519.99/month); and

(3) a 2003 Ford Explorer that they lease ($458.00/month).

The Johnson's actual monthly payments on their three vehicles total $1,296.99.

Form B22C (lines ##27–28) specifically instructs debtors to deduct allowances for up to two vehicle.[4] This treatment also conforms to the IRS Local Standards provided on the U.S. Trustee Program's

---

**2.** *See* Bankruptcy Allowable Living Expenses (Georgia), available at *http://www.usdoj.gov/ust/eo/bapcpa/bci_data/housing_charts/irs_housing_charts_GA.htm* (last visited on June 21, 2006).

**3.** According to Form B22C (lines ##27 & 28), Debtors may deduct allowances for up to two cars. Although the Bankruptcy Code does not specifically limit the number of vehi-

cles in a household, this treatment conforms to the IRS Local Standards. *See* Internal Revenue Manual, Financial Analysis Handbook § 5.15.1.7(4)(b), available at *http://www.irs.gov/irm/part5/ch15s01.html* (last visited on June 21, 2006).

**4.** *See supra* note 3.

website.[5] The Johnsons have taken Local allowances for just two of their three vehicles. In this locality, the total allowance for two vehicles (including maintenance and ownership expenses) is $1,149.00 per month.

I find that the Johnson's have correctly itemized their transportation expenses on Form B22C. Their decision not to budget the expense of a third auto lease may be imprudent. Reaffirming the lease will require them to pull funds from other parts of their budget. It might very well handicap their Chapter 13 plan. It also begs the question of why the Johnsons should be entitled to discretionary expenses like the $725.00 per month that they deduct for unreimbursed health care—an Other Necessary Expense that the Trustee does not object to. Form B22C (line # 36).

However, an unbudgeted expense will not reduce their total disposable income, as calculated by Form B22C. Because they choose not to deduct it, the lease does no harm to the unsecured creditors. Therefore, the Trustee's specific objection to the Johnsons' vehicle leases is overruled.

## 2. IRS Allowances for Other Necessary Expenses

Unlike the National and Local Allowances, the IRS Allowances for Other Necessary Expenses(the "ONE deductions") are based entirely on the needs of a particular debtor. By incorporating them, BAPCPA explicitly authorizes deductions for expenses that were not previously recognized by the Code. These expenses include life insurance premiums, health insurance, health savings accounts, child care, personal security, phones, internet, and certain education costs. 11 U.S.C. § 707(b)(2) and Form B22C.

The ONE deductions are not simply a grab bag, however. Debtors have a duty, under penalty of perjury, to provide the Trustee with a budget that is "true and correct." Form B22C (line # 60). It is the Trustee's prerogative to object to ONE deductions that are not actual, necessary, and reasonable.

These Debtors have each taken several ONE deductions. The Robertses, in preparing Form B22C, have taken deductions of $1,425.38 per month for income taxes (line # 30); $131.60 per month for life insurance (line # 32); $550.00 per month for unreimbursed health care (line # 36); and $200.00 per month for telecommunication services (line # 37). The Johnsons take deductions of $1,910.73 per month for income taxes (line # 30); $725.00 per month for unreimbursed health care (line # 36); and $125.00 per month for telecommunication services (line # 37).

In both cases, the Debtors' ONE Deductions are greater than their Disposable Income deficits. Yet the Trustee has objected only to the Robertses' ONE deduction for unreimbursed health care costs. I sustain his objection.

Debtors may deduct only their "actual monthly expenses for the categories specified as Other Necessary Expenses." 11 U.S.C. § 707(b)(2)(A)(ii). I find that the Robertses have not carried their burden to prove that $550.00 is their "actual monthly expense" for unreimbursed health care.

Eligibility for any ONE deduction also requires that it meet the Internal Revenue Service's "necessary expense test" defined in the IRS Financial Analysis Handbook (the "IRS Handbook"), as "expenses . . .

5. See IRS LOCAL TRANSPORTATION STANDARDS (SOUTH CENSUS REGION), available at http://www.usdoj.gov/ust/eo/bapcpa/bci_data/ IRS_Trans_Exp_Stds_SO.htm (last visited on June 21, 2006).

necessary to provide for a taxpayer's and his or her family's health and welfare and/or production of income." The IRS Handbook further provides that, "[t]he amount must be reasonable considering the taxpayer's individual facts and circumstances."[6]

■ The burden is on the debtor to establish that a ONE deduction is actual, necessary and reasonable. This includes the ONE deduction for unreimbursed health care. Per the IRS Handbook: "The taxpayer [here, the debtor] must provide proof of excessive out of pocket medical expenses."[7]

■ Not § 1325(a)(3), but rather § 1325(b) confers on me the authority to determine whether a ONE deduction claimed by the debtor is actual, reasonable, and necessary. The inquiry is not into the debtor's good faith *per se*, but whether the debtor has actually committed all projected disposable income to funding the plan. See 11 U.S.C. § 1325(b)(1)(B).

Because the Code now defines "reasonable necessary expenses" mechanically (at least for above-median income debtors), my authority to inquire into a debtor's deductions is limited to those categories of deductions that explicitly require a showing that the expenses are actual, or necessary and reasonable. All deductions defined as Other Necessary Expenses require such a showing.

The Robertses must amend Form B22C and attach appropriate documentation demonstrating that their deduction for unreimbursed health and dental costs is actual, necessary and reasonable. The Trustee (or any unsecured creditor) may object to

any ONE deduction that reduces "projected disposable income" to the extent that the Debtors fail to show that the expense is actual, necessary and reasonable. 11 U.S.C. § 1325(b)(1)(B).

## II. APPLICATION OF TAX REFUNDS TO "DISPOSABLE INCOME" CALCULATIONS

■ Now I turn to the issue of the tax refunds. The Trustee objects to tax refunds that both of these Debtors received in 2005. In his opinion, the Debtors should have included these refunds *as income* on Form B22C and Schedule I. The Trustee argues that " 'refund[s]' [are] the progeny of the Debtors' 'income' " for the purposes of Schedule I and Form B22C. Trustee's Brief, p. 1. The Trustee bases his objection on the good faith requirement at § 1325(a)(3).

He argues that, irrespective of the Debtors' intent, the effect of over-withholding is to shelter assets from creditors. The Trustee is concerned that these Debtors are withholding more than their actual annual tax obligations, and will continue these patterns of over-withholding throughout the terms of their plans.

The Debtors contend that they are not required to include the refunds as income for the following reasons:

The Debtors filed their cases more than six months after their receipt of their tax refunds. Form B22C corresponds to the Code's definition of "current monthly income" (CMI) which contemplates a six-month "look-back" period. 11 U.S.C. § 101(10A) and Form B22C (line # 1). According to the Debtors, they are not required to include income received before

6. See INTERNAL REVENUE MANUAL, FINANCIAL ANALYSIS HANDBOOK § 5.15.1.7(1), available at *http://www.irs.gov/irm/part5/ch15s01.html# d0e176381* (last visited on June 21, 2006).

7. *Id.* at § 5.15.1.10(3).

the applicable six-month period. There is no bad faith where a debtor simply computes CMI using the Code's mechanical definition.

Form B22C also requires that the Debtors enter their *gross income.* Form B22C (lines ## 1–3) inputs gross receipts, without any deductions for taxes or (if applicable) business expenses. Were the previous year's tax refunds included as gross income, then "disposable income" would be inaccurately skewed. That is because gross income is itself taxed and refunded. Including both would create a double accounting problem that would persist for the plans' durations.

The Debtors are correct that the relief requested by the Trustee is inappropriate. Tax refunds may well be the "progeny of income," but § 707(b) treats taxes as expenses, not revenues.

The Debtors, in their briefs, argue at length that the sufficiency of disposable income is better determined by § 1325(b) and, by reference, § 707(b), rather than § 1325(a)(3). Here, too, the Debtors are correct.

Section 707(b) treats income taxes as deductions for Other Necessary Expenses (ONE deductions). Debtors may deduct only their "actual monthly expenses for the categories specified as Other Necessary Expenses." 11 U.S.C. § 707(b)(2)(A)(ii). Debtors must also meet the Internal Revenue Service's "necessary expense test" which requires that the deduction be reasonable and necessary. Because I find that neither of these Debtors have shown that their deductions for monthly income taxes are actual, reasonable, or necessary, I sustain the Trustee's objections.

I do not grant the specific relief the Trustee has requested. Instead, the Debtors must amend their B22C Forms and attach appropriate documentation demonstrating that their ONE deductions for taxes are actual, necessary and reasonable. Per the instructions on Form B22C (line # 30), they must submit their *actual* (average monthly) expenses for all federal, state, and local income taxes, self-employment taxes, social security taxes, and Medicare taxes, but not real estate or sales taxes. To the extent that the Debtors would be entitled to a state or federal refund of the income taxes budgeted, the deduction is not the actual monthly tax liability. It is not therefore actual, necessary, or reasonable.

The Robertses' 2004 tax records indicate that they had a total federal income tax liability of $3,194, but paid $9,968, entitling them to a refund of $6,774. They had a total Georgia income tax liability of $1,381, but paid $2,895, resulting in a refund of $1,514. Their 2004 income tax refunds totaled $8,288, meaning that taxing authorities over-withheld an average of $690 per month. Their Form B22C indicates that they now spend $1,425 per month on taxes (line # 30), or $17,105 annually.

The Johnsons have not submitted their 2004 tax records into evidence. However, their Form B22C indicates that they spend $1,910 per month on taxes (line # 30), or $22,920 annually.

Obviously, these amounts include Social Security and other non-refundable taxes. Still, it is the Debtors' burden to demonstrate that these figures are actual, necessary, and reasonable. These Debtors need to substantiate their tax expenses before I may confirm their plans. 11 U.S.C. § 1325(b)(1)(B).

*ORDER*

It is therefore ORDERED that the objections to confirmation are sustained in

both of these cases. The Debtors are granted leave to file modifications of their Chapter 13 plans consistent with the conclusions of law *supra*.