In re Lowell Leroy TURNER, Kenya Shanta Turner, Debtors.

Barnee C. Baxter, Chapter 13 Trustee, Movant

v.

Lowell Leroy Turner, Kenya Shanta Turner, Respondents.

No. 07–10929.

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

March 17, 2010.

Lee Ringler, Lee Ringler Law Offices, Augusta, GA, for Debtors.

### ORDER

SUSAN D. BARRETT, Bankruptcy Judge.

This matter comes before the Court on Objection to Confirmation of Chapter 13

Plan filed by the Chapter 13 Trustee ("Trustee"). The Trustee avers Debtors' plan is not proposed in good faith because the proposed plan duration is less than 5 years. This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (L). For the reasons discussed below, the Trustee's Objection is SUSTAINED.

### FINDINGS OF FACT

- Debtors' chapter 13 plan provides "Debtor(s) shall pay to the Trustee the sum of $457.00 for the applicable commitment period of: a minimum of 36 months. § 1325(b)(4)." (*See* Dckt. # 7.)

- Debtors' Schedule I lists an average monthly income of $4,095.61, and Schedule J reflects average monthly expenses of $3,638.64, resulting in a monthly net income of $456.97. (*See* Dckt. # 1.)

- Debtors' B22C Means Test Form ("B22C") reflects Debtors are "above-median" debtors. (*See* Dckt. ## 1 and 28.)

- Debtors' original B22C shows an applicable commitment period of 5 years and lists monthly disposable income as *negative* $99.79. (*See* Dckt. # 1.)

- Debtors' amended B22C reflects a monthly disposable income of *negative* $570.83 and changed the "applicable commitment period" from 5 years to 3 years. (*See* Dckt. # 28.)

- Debtors' plan proposes to pay a 0% dividend to their unsecured creditors. (*See* Dckt. # 1, 12(i).)[1]

- The Trustee objects to confirmation of Debtors' chapter 13 plan. (*See* Dckt. ## 20, 22 and 23.) Because Debtors are above-median debtors, the Trustee argues § 1325(b)(4) requires a plan duration of 60 months, not 3 years.

### CONCLUSIONS OF LAW

The issue is whether the term "applicable commitment period" as used in 11 U.S.C. § 1325(b)(1)(B) and (b)(4) is "temporal" requiring a specific plan duration or a "multiplier" used to determine an amount of money to be distributed to unsecured creditors under the plan. Debtors are above median-income debtors with negative B22C disposable income. Debtors argue "applicable commitment period" does not establish a minimum plan length, but rather it is a multiplier determining the amount of money Debtors must pay to unsecured creditors. "As a result [of a negative B22C monthly disposable income result, Debtors] are not required to return anything to their general unsecured creditors...." (*See* Dckt. # 24, p. 2.) According to Debtors when the B22C reflects a negative disposable income, then applicable commitment period is irrelevant. Conversely, the Trustee argues the "applicable commitment period" language of § 1325(b)(4)(B) is temporal in nature and allows for a shorter "applicable commitment period" only if the plan provides for payment in full of all allowed unsecured claims over the shorter period.

### Applicable Commitment Period.

■ Upon objection of the Trustee or the holder of an allowed unsecured claim, Debtors' plan may not be confirmed unless all unsecured creditors are paid in full, or "all of the debtor's projected disposable income to be received in the applicable commitment period ... be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B).[2] "Appli-

---

1. Debtors argue their proposed "pot plan" may actually result in an approximate 27% ($8,000.00) dividend to unsecured creditors. (*See* Dckt. ## 38 and 39, p. 2.)

2. Section 1325(b)(1) provides:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
(A) the value of the property to be distributed under the plan on account of such claim

cable commitment period" is defined pursuant to 11 U.S.C. § 1325(b)(4)[3] as three years for below-median income debtors and not less than 5 years for above-median debtors; provided it may be less than 3 or 5 years, *but only if* the plan provides for payment in full of all allowed unsecured claims over a shorter period. 11 U.S.C. § 1325(b)(4)(B).

Several cases have required the applicable commitment period be treated as a period of time for plan duration. *See In re Musselman,* 379 B.R. 583, 593 (Bankr. E.D.N.C.2007); *In re Plumb,* 373 B.R. 429 (Bankr.W.D.N.C.2007); *In re Grant,* 364 B.R. 656 (Bankr.E.D.Tenn.2007); *In re Slusher,* 359 B.R. 290 (Bankr.D.Nev.2007); *In re Girodes,* 350 B.R. 31 (Bankr. M.D.N.C.2006); *In re Casey,* 356 B.R. 519 (Bankr.E.D.Wash.2006). Other courts have interpreted the applicable commitment period as a multiplier and have reasoned that when debtor has a negative B22C disposal income the applicable commitment period is irrelevant. *See In re Frederickson,* 375 B.R. 829 (8th Cir. BAP 2007) (2–1 decision), *appeal filed,* No. 07–3391 (8th Cir. Oct. 19, 2007); *In re Alexander,* 344 B.R. 742 (Bankr.E.D.N.C.2006).

After considering the issue, the Court finds the "applicable commitment period" is a temporal concept requiring Debtors to propose a 5–year plan.

■ Section § 1325(b)(4) which defines "applicable commitment period" uses words with temporal meanings—"period"[4] and "years." Section 1325(b)(4)(B) goes on to provide that the applicable commitment period "may be less than 3 or 5 years, whichever is applicable under subparagraph (A), *but only if* the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. § 1325(b)(4)(B). Allowing plans of above-median debtors to be confirmed that propose a shorter period of time would render this section meaningless and superfluous and, in theory, allow one week plans or even lump-sum payment plans, which the Court finds to be at odds with the plain meaning of § 1325(b)(4)(B) and the Bankruptcy Code in general. As one court has said:

> It is irrelevant whether the projected disposable income is zero or $1,000 or some other amount. If unsecured claims are not to be paid in full, the plan must have a length of three (3) years for

---

is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

**3.** Section 1325(b)(4) provides in pertinent part:

(4) For purposes of this subsection, the 'applicable commitment period'—
(A) subject to subparagraph (B), shall be—
(i) 3 years; or
(ii) not less than 5 years, if the current monthly/income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—

• 
• 
• 

(II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals;
• 
• 
• 

(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

**4.** The word "period" means "a division of time in which something is completed." *Webster's Third New International Dictionary* 1680 (2002).

below-median income debtors and not less than five (5) years for above-median income debtors.

*In re Casey,* 356 B.R. 519, 527 (Bankr. E.D.Wash.2006).

As other courts have noted, Congress uses the word "multiply" when it wants a mathematical result. *In re Davis,* 348 B.R. 449, 456 (Bankr.E.D.Mich.2006); *In re Slusher,* 359 B.R. at 301–02; *In re Hylton,* 374 B.R. 579, 587–88 (Bankr. W.D.Va.2007). For example, within the sections directly involved in this opinion, Congress uses "multiplied" to achieve mathematical results § 1325(b)(3)("if debtor has current monthly income, when multiplied by 12"); § 1325(b)(4)("[f]or purposes of this subsection, the 'applicable commitment period' ... shall be ... not less than 5 years (if the current monthly income of the debtor ... when multiplied by 12")); §§ 1322(d)(1) and (d)(2)("[i]f the current monthly income of the debtor ... when multiplied by 12"). *See also* 11 U.S.C. §§ 507(a)(5)(B)(i), 704(b)(2), 707(b)(2)(B)(iv), 707(b)(6), 706(b)(7)(A), 1326(b)(3)(B)(ii).

BAPCPA's legislative history supports a finding that "applicable commitment period" sets the required plan length. House Report 109–31 provides in pertinent part:

> Sec. 318. *Chapter 13 Plans to Have a Five-Year Duration in Certain Cases*
> "... a chapter 13 plan may not provide for payments over a period that is not less than five years if the current monthly income of the debtor and the debtor's spouse combined exceeds certain monetary thresholds. If the current monthly income of the debtor and the debtor's spouse fall below these thresholds, then the duration of the plan may not be longer than three years, unless the court, for cause, approves a longer period up to five years. *The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period.*"

H.R.Rep. No. 31(I), 109th Cong., 1st Sess. at 79 (2005), reprinted in 2005 U.S.C.C.A.N. at 143(emphasis added). "Applicable commitment period" as contemplated by the House Report is temporal in nature and refers to plan duration. Furthermore, the title of the House Report comment is temporal—"Chapter 13 plans to have a five-year duration in certain cases."

Some courts like *Frederickson* and *Alexander, supra,* have tied "projected disposable income" to "applicable commitment period" and stated when there is negative disposable income then applicable commitment period is not relevant. *Alexander,* 344 B.R. at 751. However, the B22C form clearly links applicable commitment period to whether the debtor is an above or below-median income debtor. "The length of the applicable commitment period is tied to the above or below-median current monthly income of the debtor, not to the projected disposable income of the debtor." *See In re Musselman,* 379 B.R. 583, 593 (Bankr.E.D.N.C.2007).

While some courts look to § 1322 as stating the length of the plan, § 1322 sets the *maximum* length of a plan and § 1325(b)(1) states the required length of the plan depending on whether debtor is a below or above-median income debtor. *See* Alane A. Becket & Thomas A. Lee III, *Applicable Commitment Period: Time or Money?,* Am. Bankr.Inst. J. 16 (March 2006).

Section 1322[5] also provides that plans

---

**5.** Section § 1322 provides in pertinent part:
(a) The [contents of the] plan shall—
●
●

(4) notwithstanding any other provision of this section, a plan may provide for less than full payment ... only if the plan pro-

such as the one proposed by the Debtors must be five years. It also is interesting to note that the same House Report cited above is part of the legislative history of both § 1322 and § 1325. H.R.Rep. No. 31(I), 109th Cong., 1st Sess. at 79 (2005), reprinted in 2005 U.S.C.C.A.N, at 143.

Finally, this temporal construction also gives meaning to 11 U.S.C. §§ 521(a)(1)(B)(vi) and 521(f), which respectively require debtors to file post-petition financial information and annual income tax returns which allow the Trustee or a party in interest to request a modification under 11 U.S.C. § 1329. If above-median debtors with negative disposable income could just propose a plan of one month or less such requirements would have no meaning.

For these reasons, I conclude "applicable commitment period" is a temporal concept requiring debtors with above median income to pay all unsecured creditors in full, or propose a plan length of 5 years.

**_Good faith._**

The Trustee also opposes confirmation on good faith grounds. Under 11 U.S.C. § 1325(a)(3) a plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Pre–BAPCPA, the Court applied the *Kitchens* "totality of the circumstances" test. *See Kitchens v. Ga. RR Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885, 888 (11th Cir. 1983). The Eleventh Circuit provided a list of non-exhaustive factors to consider when analyzing good faith:

1. the amount of the debtor's income from all sources;

2. the living expenses of the debtor and his dependents;

3. the amount of attorney's fees;

4. the probable or expected duration of the debtor's Chapter 13 plan

5. the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

6. the debtor's degree of effort;

7. the debtor's ability to earn and the likelihood of fluctuation in his earnings;

8. special circumstances such as inordinate medical expenses;

9. the frequency with which the debtor has sought relief under the Bankruptcy Code;

10. the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of the same, in dealing with his creditors;

11. the burden which the plan's administration would place upon the trustee;

12. the substantiality of repayment; and

13. the potential nondischargeability of debt in a chapter 7 proceeding.

*Kitchens,* 702 F.2d at 888–89.

■ Debtors argue cases following the "multiplier" analysis have delivered "[a]nother grievous wound to the already moribund *Kitchens* test. . . . Is this not the

---

vides that all of the debtor's projected disposable income for a 5–year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

•
•
•

(d) (1) If the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than—

•

•
•

(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

•
•
•

the plan may not provide for payments over a period that is longer than 5 years.

time for the final interment of the ossified *Kitchens* test . . . ?" (*See* Dckt. # 41.) The Court finds while BAPCPA may have modified the *Kitchens* test, it did not do away with the "totality of the circumstances" analysis. *See In re Johnson,* 346 B.R. 256, 264 (Bankr.S.D.Ga.2006)(good faith test has been altered, but not eliminated); *In re Shelton,* 370 B.R. 861, 869 (Bankr.N.D.Ga.2007) (plan that proposes 0% to unsecured creditors when debtor could pay substantially does not pass *Kitchens* good faith test). BAPCPA's changes to the Code provide opportunities to savvy debtors to manipulate the calculations. *In re Johnson,* 346 B.R. at 264. For example, "[t]he debtor might take an unpaid leave of absence, quit a job, or refuse overtime the [debtor] formerly welcomed." *Id.citing* Culhane & White, *Catching Can–Pay Debtors: Is the Means Test the Only Way?,* 13 AM. BANKR. L. REV. 665, 689 (2005). Good faith remains a test to consider on a case-by-case basis. *Id.*

■ In this particular case, the Trustee objects to Debtors' retention of four vehicles, all which are in need of repair.[6] Debtors are allowed to take deductions for two vehicles/household on their B22C. (*See* lines 27–29 of B22C form, Dckt. # 28.) In this case, Debtors have limited their B22C deductions to two vehicles. Interestingly, Debtors have taken the deductions for the two vehicles with debt–1987 Buick and the 1995 Honda. In another case this may factor into a question of manipulation of the B22C form; however, in the current case it is immaterial because the parties agree even without these deductions, Debtors' B22C result remains negative. The Trustee does not object to Debtors' Schedule J expenses for these vehicles. Overall, while retaining four vehicles may not be financially prudent, this alone does not rise to the level a "bad faith" under *Kitchens* totality of the circumstances test.

For these reasons, the Court finds the required plan length of these above-median income debtors is 5 years. Therefore confirmation of Debtors' plan must be DENIED and Debtors' counsel is ordered to file a modified plan or conversion within fifteen (15) days of the date of this order.

---

6.

| Vehicle | Miles | Approx. Debt |
|---|---|---|
| 1984 Ford F150 | 170,000 | $0 |
| 1987 Buick | 140,000 | $10,055 |
| 1994 Honda | 234,000 | $1,228 |
| 1994 Mercury | 134,000 | $0 |