*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0045p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

In re:  DEBORAH K. SEAFORT; FREDERICK C. SCHULER; CARRIE A. SCHULER,

*Debtors.*

_____

DEBORAH K. SEAFORT; FREDERICK C. SCHULER; CARRIE A. SCHULER,

*Appellants,*

*v.*

BEVERLY M. BURDEN, Trustee,

*Appellee.*

No. 10-6248

On Appeal from the Bankruptcy Appellate
Panel for the Sixth Circuit.
Nos. 08-22380; 08-22417—
William S. Howard, Bankruptcy Judge.

Argued:  January 18, 2012

Decided and Filed:  February 15, 2012

Before:  SUHRHEINRICH, GIBBONS, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Michael B. Baker, THE BAKER FIRM, PLLC, Florence, Kentucky, for Appellants.  Daniel E. Hitchcock, WYATT, TARRANT & COMBS, LLP, Lexington, Kentucky, for Appellee.  **ON BRIEF:**  Michael B. Baker, THE BAKER FIRM, PLLC, Florence, Kentucky, for Appellants.  Daniel E. Hitchcock, WYATT, TARRANT & COMBS, LLP, Lexington, Kentucky, for Appellee.

————————————

**OPINION**

————————————

SUHRHEINRICH, Circuit Judge.  Chapter 13 of the Bankruptcy Code permits "individual[s] with regular income" whose debt falls within statutory limits, *see* 11 U.S.C. §§ 101(30), 109(e), to keep their property if they agree to a court-approved plan to pay creditors out of their future "disposable income." *See* 11 U.S.C. §§ 1306(b), 1321, 1322(a)(1), 1328(a).  However, if a trustee of the plan or an unsecured creditor objects, a Chapter 13 plan can be confirmed only if the debtor contributes "all . . . projected disposable income" to the plan.  11 U.S.C. § 1325(b)(1)(B).  The question presented in this consolidated appeal is whether the income that becomes available after the debtors have fully repaid their 401(k) loans (which is allowed by 11 U.S.C. § 1322(f)) is "projected disposable income" to be paid to the unsecured creditors or whether the income can be used to begin making voluntary contributions to the debtors' 401(k) plans and deemed excludable from both disposable income and property of the estate under 11 U.S.C. § 541(a)(1) and (b)(7).

We hold that post-petition income that becomes available to debtors after their 401(k) loans are fully repaid is "projected disposable income" that must be turned over to the trustee for distribution to unsecured creditors pursuant to § 1325(b)(1)(B) and may not be used to fund voluntary 401(k) plans.

## I. Background

On November 20, 2008, Deborah K. Seafort filed a petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Kentucky, Case No. 08-22380.  On November 24, 2008, Frederick C. Schuler and Carrie Schuler also filed a joint petition for relief under Chapter13 of the Bankruptcy Code in the same court, Case No. 08-22417.  Both Seafort and Frederick

Schuler (collectively "Debtors")[1] were eligible to participate in their employers' ERISA 401(k) qualified retirement plans.[2] Debtors were not making any contributions to their employers' 401(k) retirement plans at the time of the filing of their petitions. Both debtors were in the process of repaying a 401(k) loan to their employers' retirement plans. Schuler was repaying his 401(k) loan at the rate of $815.86 per month. Seafort was repaying her loan at the rate of $254.71 per month as of the petition dates.

Both debtors filed proposed Chapter 13 plans which called for a commitment period under 11 U.S.C. § 1325 of five years. Under the Chapter 13 plans Debtors were scheduled to repay their 401(k) loans in full prior to the completion of their commitment periods. Seafort was scheduled to repay her 401(k) loan by month 19. Schuler was scheduled to repay his 401(k) loan by month 48. Neither proposed Chapter 13 plan provided for an increase in plan payments to the Chapter 13 trustee once they had completed repayment of the 401(k) loans. Instead, both plans proposed that Debtors would begin making contributions to their 401(k) retirement plans post-petition after the 401(k) loans were paid in full. In other words, both Debtors proposed to use the income available after repayment of the 401(k) loans was completed to begin funding their retirement accounts, instead of using the freed-up income to pay unsecured creditors.

In both cases, the Chapter 13 trustee, Beverly Burden ("Trustee"), filed objections to confirmation of Debtors' plans of reorganization. Specifically, the Trustee objected to Debtors' attempts to exclude from estate property and projected disposable income proposed post-petition contributions to their 401(k) retirement plans, since Debtors were not contributing anything to their qualified retirement plans when their bankruptcy cases began.

---

[1] Carrie Schuler did not seek to begin making contributions to a qualified retirement plan during the life of the joint Chapter 13 plan. Accordingly, only Frederick Schuler and Seafort are referred to as "Debtors."

[2] ERISA 401(k) qualified retirement plan refers to an employee benefit plan that is subject to Title I of the Employee Retirement Income Security Act of 1974, or an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986, as set forth in 11 U.S.C. § 541(b)(7)(A)(i)(I).

The bankruptcy cases were consolidated to determine whether Debtors could exclude from estate property and projected disposable income post-petition earned income proposed to be used for future 401(k) retirement plan contributions. The Trustee argued that the contributions are only excludable from property of the estate and disposable income if they are being made at the time the petition is filed. The bankruptcy court disagreed, holding that "participation in a 401(k) plan is an ongoing endeavor, and while loan payments may take the place of contributions for the life of the 401(k) loan, the income stream that funds both loan payments and plan contributions is the same." *In re Seafort*, Nos. 08-3380 & 08-22417, 2009 WL 1767627, at *2 (Bankr. E.D. Ky. 2009). The bankruptcy court held that because § 541(b)(7) excludes contributions to a 401(k) plan from property of the estate and disposable income, Debtors were allowed to exclude their proposed 401(k) contributions from disposable income. *Id.*

The Trustee appealed the ruling to the Bankruptcy Appellate Panel ("BAP"). A divided BAP ruled in favor of the Trustee. The majority held that (1) exclusions from property of the estate and disposable income for contributions to a qualified retirement plan found in 11 U.S.C. § 541(b)(7) only apply to those cases where a debtor is contributing as of the commencement of a bankruptcy case, and (2) the post-petition income that becomes available after a debtor completes repayment of a 401(k) loan is not excluded from property of the estate or disposable income under 11 U.S.C. § 541(b)(7) and must be committed to a Chapter 13 plan under 11 U.S.C. § 1325(b). *In re Seafort*, 437 B.R. 204, 208-09, 211-12 (B.A.P. 6th Cir. 2010). The dissent would have held that the disposable income does not include any amount withheld as a qualified contribution based upon the plain language of § 541(b)(7). *Seafort*, 437 B.R. at 217 (Shea-Stonum, J., dissenting).

Debtors appeal.

## II. Discussion

### A.  The Statutory Framework

We start with the language of the relevant statutory provisions.  *Ransom v. FIA Card Servs. N.A.*, 131 S. Ct. 716, 723-24 (2011) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)).  As noted, if the trustee or an unsecured creditor objects to confirmation of a Chapter 13 plan, "the court may not approve the plan unless . . . the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan."  11 U.S.C. § 1325(b)(1)(B); *see also Hamilton v. Lanning*, 130 S. Ct. 2464, 2469 (2010).   "Disposable income" is defined in relevant part as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . for the maintenance or support of the debtor."   11 U.S.C. § 1325(b)(2)(A)(i).[3]  For debtors whose income exceeds the state median, as in this case, the "amounts reasonably necessary to be expended" is determined by the "means test" set forth in § 707(b)(2).  *See* 11 U.S.C. § 1325(b)(3); *see also Baud v. Carroll*, 634 F.3d 327, 332-34 (6th Cir. 2011) (explaining the appropriate method for calculating "amounts reasonably necessary to be expended") *cert. denied*, – S. Ct. – (Jan. 9, 2012) (No. 10A1008, 11-27).

"Projected disposable income" is not defined in the Bankruptcy Code, but the Supreme Court recently explained that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income

---

[3]Section 1325(b)(2) contains three exceptions to "disposable income":

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

(ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2).  Only subsection (A)(i) is relevant here.

or expenses that are known or virtually certain at the time of confirmation." *Lanning*, 130 S. Ct. at 2478; *Darrohn v. Hildebrand (In re Darrohn)*, 615 F.3d 470 (6th Cir. 2010) (applying *Lanning* to the debtors' monthly mortgages, an otherwise deductible expense, because they intended to surrender the properties securing the mortgages).  Because the Trustee here objected to Debtors' proposed plans, the bankruptcy court appropriately took into account the post-petition income available upon repayment of the 401(k) loans.  Thus, we must decide whether that income is "projected disposable income" that must be committed to the Chapter 13 plan and paid out to unsecured creditors or instead is otherwise excluded.

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), both 401(k) loans and 401(k) contributions were considered "disposable income."  *See Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 435-36 (6th Cir. 2004) (holding that voluntary contributions to a 401(k) plan were "disposable income"); *Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775, 777-78 (6th Cir. 1995) (holding that the debtor's voluntary repayment of 401(k) loans should be treated as disposable income in the bankruptcy estate).  However, the BAPCPA added two exclusionary sections of importance here.  The first, § 1322(f), is clear:  It states in relevant part that "any amounts required to repay such loan shall not constitute 'disposable income' under section 1325."  11 U.S.C. § 1322(f).

The second provision, § 541(b)(7), is less so.  *See In re Egan*, 2011 WL 3902817, at *5 (Bankr. E. D. Pa. Aug. 30, 2011) (commenting that "like many provisions of the Bankruptcy Code added by BAPCPA, . . . the text of § 541(b)(7) [is] less than clear").  It provides as follows:

> (b) Property of the estate does not include—
>     . . .
>     (7) any amount—
>         (A) withheld by an employer from the wages of
>         employees for payment as contributions—
>         (i) to—
>         (I) an employee benefit plan that is
>         subject to title I of the Employee
>         Retirement Income Security Act of 1974

> or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
>
> . . .
>
> *except that such amount under this subparagraph* shall not constitute disposable income as defined in section 1325(b)(2)[.]

11 U.S.C. § 541(b)(7) (emphasis added).[4]

This exclusion is found outside the confines of Chapter 13, in § 541. Section 541(a)(1) provides the general rule that property of the bankruptcy estate consists of all legal and equitable interests of the debtor in property as of the commencement of the case, subject to certain exceptions, namely those found in subsection (b) and (c)(2). It reads as follows:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> (1) *Except as provided in subsections (b) and (c)(2) of this section*, all legal or equitable interests of the debtor in property *as of the commencement of the case.*

---

[4]11 U.S.C. § 541(b)(7) provides in full:

(7) any amount–
(A) withheld by an employer from the wages of employees for payment as contributions–
(i) to–
(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
(II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
(III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986; except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2); or
(ii) to a health insurance plan regulated by State law whether or not subject to such title; or
(B) received by an employer from employees for payment as contributions--
(i) to–
(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
(II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
(III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986; except that such amount under this subparagraph shall not constitute disposable income, as defined in section 1325(b)(2); or
(ii) to a health insurance plan regulated by State law whether or not subject to such title[.]

11 U.S.C. § 541(a)(1) (emphases added).[5]

> By contrast, "Property of the estate" for purposes of Chapter 13 is defined as:
>
> (a) Property of the estate includes, *in addition to the property specified in section 541* of this title–
> (1) *all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed*, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
> (2) *earnings from services performed by the debtor after the commencement of the case but before the case is closed*, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.
> (b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

11 U.S.C. § 1306 (emphases added). Section 1306(a) expressly incorporates § 541. Read together, § 541 fixes property of the estate as of the date of filing, while § 1306 adds to the "property of the estate" property interests which arise post-petition.

## B. Competing Views

Although no circuit has addressed the question presented here, several bankruptcy and district courts have, with divergent results. *See, e.g., In re Egan*, 458 B.R. 836, 843-44 (Bankr. E.D. Pa. 2011) (listing various approaches); *In re McCullers*, 451 B.R. 498, 501 (Bankr. N.D. Cal. 2011) (same). The first view, adopted by the BAP majority in this case, reads §§ 541 and 547(b)(7) as limiting voluntary retirement contributions to those amounts being made as of the petition date (hereinafter referred to as the "BAP majority" or "*Seafort* majority"). The second view, typified by the *Johnson* decision [*In re Johnson*, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006)] holds that all voluntary retirement contributions, both pre- and post-petition, are permitted under

---

[5]Section 541(b) lists a number of exclusions, including, *inter alia,* any power that the debtor may exercise for the benefit of some other entity; any eligibility to participate in programs authorized under the Higher Education Act; any interest in liquid or gaseous hydrocarbons; and funds used to purchase a tuition credit. *See* 11 U.S.C. § 541(b).

Subsection 541(c)(2) exempts a debtor's inalienable beneficial interest in an ERISA-qualified account from the bankruptcy estate. *Patterson v. Shumate*, 504 U.S. 753, 756-63 (1992).

§ 541(b)(7), limited only by the good faith requirement of § 1325(a)(3).**[6]** A third view, articulated in *In re Prigge*, 441 B.R. 667 (Bankr. D. Mont. 2010), holds that § 541(b)(7) does not permit post-petition voluntary retirement contributions in any amount regardless of whether the debtor was making pre-petition retirement contributions.

### 1.  The *Seafort* Majority

As noted, the *Seafort* majority held that § 541(b)(7), within the context of § 541, fixes the amount of voluntary 401(k) contributions a debtor may make on the date of filing for bankruptcy relief.  In other words, the debtor may continue making voluntary contributions in the same amount he or she was contributing at the time of filing.  The *Seafort* majority reasoned that:

> [T]he language of § 541(a) is clear. Property of the estate under § 541(a)(1) and exclusions from property of the estate under § 541(b) must both be determined on the date of the filing of the case. As provided in the statute, § 541(a) specifically states that "the commencement of a case ... creates an estate." Section 541(b) excludes certain property from the definition of "property of the estate." Read together, § 541(a) and (b) establish a fixed point in time at which parties and the bankruptcy court can evaluate what assets are included or excluded from property of the estate. Section 541(a) clearly establishes this point as the commencement of the case. Therefore, only 401(k) contributions which are being made at the commencement of the case are excluded from property of the estate under § 541(b)(7).

*Seafort*, 437 B.R. at 209.

In further support, the *Seafort* majority noted that § 1306, which addresses property acquired after the petition date in Chapter 13 cases, does not exclude from disposable income post-petition voluntary retirement contributions.  *Seafort*, 437 B.R. at 209.  Third, the BAP majority stated that this result was also supported by the language in § 541(b)(7), which excludes  "disposable income" and not "projected disposable income."  *Id.*  Finally, the BAP majority found its conclusion was consistent

---

**[6]** Section 1325(a)(3) states that "the court shall confirm a plan if– . . . (3) the plan has been proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1325(a)(3).  This is a mandatory requirement. *See Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 455 (6th Cir. 2009).

with the legislative intent of ensuring that debtors repay creditors to the maximum extent possible and protecting debtors' ability to save for retirement. *Id.* at 209-10 (citing H.R.Rep. No. 109–31, pt. 1, at 2 (2005), U.S.Code Cong. & Admin. News 2005, pp. 88, 89)). *Id.* at 210.

The *Seafort* majority's view has been followed by two lower courts. *See In re Noll*, No. 10-35209-svk, 2010 WL 5336916, at *2 (Bankr. E.D. Wis. Dec. 21, 2010); *In re Fletcher*, No. 10-53109, 2011 WL 5509081 at *3-4 (Bankr. E.D. Ky. Nov. 10, 2011).

### 2.  The *Johnson* Decisions

Several bankruptcy courts have held that the plain language of § 541(b)(7) allows a Chapter 13 debtor to make voluntary post-petition contributions to a qualified retirement plan up to the maximum amount permitted under nonbankruptcy law, regardless of whether the debtor was making such contributions at the time of filing, subject only to the good faith requirement imposed by § 1325(a)(3). *See, e.g., In re Gibson*, No. 09-01196-JDP, 2009 WL 2868445, at *2–3 (Bankr. D. Idaho Aug. 31, 2009); *In re Mati*, 390 B.R. 11, 15–17 (Bankr. D. Mass. 2008); *In re Devilliers*, 358 B.R. 849, 864–65 (Bankr. E.D. La. 2007); *In re Leahy*, 370 B.R. 620, 623–24 (Bankr. D. Vt. 2007); *In re Shelton*, 370 B.R. 861, 865–66 (Bankr. N.D. Ga.2007); *In re Nowlin*, 366 B.R. 670, 676 (Bankr. S.D. Tex. 2007), *aff'd on other grounds*, 576 F.3d 258 (5th Cir. 2009); *In re Njuguna*, 357 B.R. 689, 690 (Bankr. D. N.H. 2006); *In re Johnson*, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006). *Johnson*, the first case to espouse this view, reasoned that:

> Not all sources of income need be committed to a Chapter 13 plan. . . .
>
> . . . .
>
> Debtors are also permitted to shelter certain contributions to employee benefit plans (EBPs). "[A]ny amount" that is either "withheld by" or "received by" a debtor's employer for qualifying EBPs, deferred compensation plans, tax-deferred annuities, or state-law-regulated health insurance plans "shall not constitute disposable income, as defined in section 1325(b)(2)." 11 U.S.C. § 541(b)(7)(A) & (B) (emphasis added).
>
> . . . .

Furthermore, in addition to sheltering EBP contributions, the Code also protects repayments of loans from EBPs, including loans from 401(k) plans. [*See*] 11 U.S.C. § 1322(f). . . . Sections 541(b)(7) and 1322(f) both plainly state that these contributions "shall not constitute disposable income." Congress has placed retirement contributions outside the purview of a Chapter 13 plan.

*Johnson*, 346 B.R. at 262-63.

In this vein, some courts reason that:

Section 547(b)(7) instructs that contributions to a qualified plan do not constitute disposable income for purposes of § 1325(b)(2). As excluded income, the contributions are not a deduction because they were never included in the first instance.
Further, unlike the provisions of § 707(b)(2) and § 1325(b)(2) or (3), § 541(b)(7) does not modify excluded contributions based on reasonableness or necessity. . . . The Code simply contains no requirement that contributions to a retirement account be "reasonable or necessary." Perhaps more accurately, Congress has determined that contributions to a qualified retirement account are, by their very nature, reasonable and necessary. By providing for a debtor's eventual retirement, retirement contributions become part of a debtor's fresh start.

*Devilliers*, 358 B.R. at 864-65. *See also Shelton*, 370 B.R. at 865 (adopting *Devilliers'* reasoning); *Leahy*, 370 B.R. at 625 (same).

Another court reached this result based on the following reasoning:

The preamble of § 1306 and subsection (a)(1) both make reference to the entirety of § 541, not just § 541(a). The text provides no basis to read the references in § 1306 to § 541 to incorporate only the inclusions provided under § 541(a) and not the exclusions provided under § 541(b). Moreover, § 1306(a)(2) does not provide, in and of itself, a textual basis to infer that § 541(b)'s exclusions, let alone § 541(b)(7) specifically, would not be applicable post-petition. To the extent § 1306(a)(2) includes in a chapter 13 estate "earnings from services performed by the debtor after the commencement of the case but before the case is closed," 11 U.S.C. § 1306(a)(2), this Court finds that the purpose of this text is to expand the scope of § 541(a)(6). . . . Section 1306(a)(1) incorporates into a chapter 13 estate "all property of the kind specified in [§ 541] that the debtor acquires *after the commencement of the case but before the case is closed, dismissed, or converted ...*" 11 U.S.C. § 1306(a)(1) (emphasis added). This language makes clear that

property of the type specified by § 541 that is acquired post-petition by a chapter 13 debtor, and not just post-petition income, becomes part of that debtor's chapter 13 estate. . . . Based on the reference in § 1306 to the entirety of § 541, this Court finds a reading of § 1306 that incorporates on an ongoing basis the exclusions of § 541(b), inclusive of § 541(b)(7), to be more consistent with the dynamic nature of chapter 13 cases.

*In re Egan*, 458 B.R. 836, 845-46 (Bankr. E.D. Pa. 2011) (footnote omitted).

### 3.  The *Prigge* View

*Prigge* held that § 541(b)(7) does not authorize a Chapter 13 debtor to make voluntary post-petition retirement contributions in any amount. *Prigge*, 441 B.R. at 676-77.  The *Prigge* court observed that Congress created an express exclusion from disposable income for amounts necessary to repay a loan from the debtor's retirement plan in § 1322(f), within the confines of Chapter 13 itself, but did not create a similar provision to exclude voluntary 401(k) contributions.  The court found this omission deliberate:  "If Congress had intended to exclude voluntary 401(k) contributions from disposable income it could have drafted § 1322(f) to provide for such an exclusion, or provided one elsewhere."  *Id.* at 677.  The *Prigge* court found further reinforcement in the fact the IRS guidelines, which supply the standardized expenditure figures used in calculating a debtor's reasonable and necessary expenses under the means test, provide that contributions to voluntary retirement plans are not a necessary expense.  *Id.*  The *Prigge* court therefore concluded that the function of § 541(b)(7) was simply to clarify that retirement contributions withheld pre-petition and still in the employer's possession on the petition date do not constitute property of the estate or post-petition disposable income.  *Id.* & n.5 (citing 5 *Collier on Bankruptcy*, ¶ 541.22C[1] (15th ed. rev.) (stating that § 541(b)(7) "seems intended to protect amounts withheld by employers from employees that are in the employer's hands at the time of filing bankruptcy, prior to remission of the funds to the plan")).

Another bankruptcy court recently examined the holdings in *Johnson*, *Seafort*, and *Prigge*.  Although it found some of the reasoning of the *Seafort* majority attractive,

it ultimately found the ruling in *Prigge* more persuasive.  *See McCullers*, 451 B.R. at 504.  The *McCullers* court rejected the *Johnson* line of cases:

> Those decisions are not persuasive, because a close reading of section 541(b)(7) indicates that "such amount" excluded from disposable income refers to prepetition contributions. With minor exceptions not relevant here, section 541(a) defines as property of the estate only property that the debtor holds on the petition date: section 541(a)(1) provides that property of the estate includes the "legal or equitable interest of the debtor in property *as of the commencement of the case*" (emphasis added), and section 541(a)(6) states that section 541 does not bring into the estate "earnings from services performed by an individual debtor after the commencement of the case."  FN 7 Section 541(b) creates exceptions to section 541(a). This structure suggests that section 541(b)(7) excludes from property of the estate only property that would otherwise be included in the estate under section 541(a). Thus, the most natural reading of section 541(b)(7) is that it excludes from property of the estate only those contributions made before the petition date. That Congress intended to exclude from disposable income only the same prepetition contributions excluded from property of the estate is indicated by its specifying the contributions excluded from property of the estate and then stating that "such amount" shall not constitute disposable income.
>
> > FN7. In a chapter 13 case, postpetition personal service income becomes property of the estate under section 1306(a)(2), not under section 541.
>
> The *Johnson* decisions also fail to explain why Congress, if it intended to enact a categorical exclusion from disposable income for retirement contributions, did not use language similar to that of section 1322(f), which created a categorical exclusion for all postpetition retirement loan repayments, but instead adopted a provision that links the amount of the exclusion for retirement contributions to prepetition contributions.

*McCullers*, 451 B.R. at 503-04.

The *McCullers* court found *Seafort* and *Prigge* more persuasive, because both "limit the amount excluded from disposable income to pre-petition contributions." *Id.* at 504.  *McCullers* found *Seafort* superficially attractive because it adopts a "plausible policy[] that Congress intended to encourage chapter 13 debtors to continue making retirement contributions, but did not intend to permit debtors to increase their rate of

contribution to the detriment of their creditors." *Id*. at 504 (citing *Seafort*, 437 B.R. at 210). Notwithstanding, the *McCullers* court concluded that "Congress actually intended the much more limited effect recognized in *Prigge*." *Id*. It found:

> First, neither the statute itself nor the *Seafort* decision offers any mechanism by which the *fixed amount* withheld as of the petition date is converted into a *monthly rate* of contribution that the debtor may continue postpetition. Second, and more important, *Seafort* does not take into account the use of the words "except that" at the beginning of the statutory language excluding retirement contributions from disposable income. . . . Use of the term "except that" suggests that the purpose of the language is merely to counteract any suggestion that the exclusion of such contributions from property of the estate constitutes postpetition income to the debtor. If Congress had intended to exclude prepetition contributions from the calculation of disposable income more generally, it would have been much more natural for Congress to provide that such contributions are excluded from property of the estate "and" in the calculation of disposable income. *Prigge's* more limited interpretation is reinforced by the fact that Congress used much more direct language in excluding retirement loan repayments from disposable income. Section 1322(f) was placed within the confines of chapter 13 itself, and states explicitly "any amounts required to repay such loan shall not constitute 'disposable income' under section 1325."
>
> Congress's use of the words "except that" is entirely consistent with the *Prigge* decision, which held that the purpose of the statute was merely to clarify that the exclusion of certain prepetition contributions from property of the estate did not give rise to disposable income to the debtor. *Prigge,* 441 B.R. at 677 n.5. This court is mindful of its obligation to adopt an interpretation that accords some effect to the statutory language in question, and that *Prigge* gives that language a very limited effect[.] . . . In using the words "except that," Congress suggests that its only purpose was to negate any inference that the exclusion of such contributions from property of the estate gives rise to income to the debtor.

*McCullers*, 451 B.R. at 504-05. *See also In re Parks*, No. 11-60050-13, 2011 WL 2493071 (Bankr. D. Mont. June 22, 2011) (following *Prigge* and *McCullers*).

### C. Analysis

As in *Baud*, we are faced with a statute that is "inelegantly drafted" and therefore we must adopt an interpretation from competing theories "that is not only more consistent with the language of the statute than the competing interpretation[s], but that also is consistent with the legislative history and the overriding purpose of BAPCPA." *Baud*, 634 F.3d at 357. Upon careful inspection, we think the view espoused by the *Prigge* and *McCullers* courts is the correct interpretation.

We begin with the assumption, as we must, that Congress's placement of 401(k) loan repayments *within* Chapter 13 itself and placement of the exclusion for voluntary retirement contributions elsewhere was deliberate. *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks and alterations omitted)); *City of Chicago v. Envtl. Defense Fund,* 511 U.S. 328, 338 (1994) ("[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.") (internal quotation marks and citation omitted)); *Hildebrand v. Petro (In re Petro)*, 395 B.R. 369, 375 (6th Cir. B.A.P. 2008) (same).

The easy inference is that Congress did not intend to treat voluntary 401(k) contributions like 401(k) loan repayments, because it did not similarly exclude them from "disposable income" within Chapter 13 itself. *See* § 1322(f) (stating that "any amounts required to repay such loan shall not constitute 'disposable income' under section 1325"). *See McCullers*, 451 B.R. at 503-04; *Prigge*, 441 B.R. at 677. Congress also does not consider voluntary contributions as "reasonable and necessary expense[s]" deductible from "disposable income," *see* § 1325(b)(3), because it did not list them in § 707(b)(2)(A) & (B). In fact, it expressly excluded them from the list of "necessary expenses" in Official Form 22C, which provides the formula for calculating "reasonable and necessary expenses" of above-median income debtors. *See* Official Form 22C, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment

Period and Disposable Income, line 31(Dec. 2010). *See generally Lanning*, 130 S.Ct. at 2470 n. 2 ("The formula for above-median-income debtors is known as the 'means test' and is reflected in a schedule (Form 22C) that a Chapter 13 debtor must file."); *Baud*, 634 F.3d at 333-34. Line Item 31, entitled "Other Necessary Expenses: involuntary deductions for employment," unequivocally instructs that in calculating "Deductions from Income" the above-means Chapter 13 debtor may "[e]nter the total average monthly deductions that are required for your employment, such as mandatory retirement contributions . . . . **Do not include discretionary amounts, such as voluntary 401(k) contributions**." Official Form 22C, line 31. *See generally Prigge*, 441 B.R. at 677 (observing that the IRS guidelines state that voluntary retirement contributions are not a necessary expense).

Notwithstanding, § 541(b)(7) must provide *some* sort of protection for voluntary retirement contributions in Chapter 13 cases, because it says that such contributions "shall not constitute disposable income as defined in section 1325(b)(2)." § 541(b)(7) (the so-called "hanging paragraph"). But Congress said this in the larger context of § 541(a)(1). As the *McCullers* court pointed out, "[t]his structure suggests that section 541(b)(7) excludes from property of the estate only property that would otherwise be included in the estate under section 541(a). Thus, the most natural reading of section 541(b)(7) is that it excludes from property of the estate only those contributions made before the petition date." *McCullers*, 451 B.R. at 503-04. To this extent, we think the BAP majority properly read §§ 541(a)(1) and (b) together, as defining "property of the estate" by what is included and excluded at a fixed point in time–as of commencement of the bankruptcy case. We agree with *McCullers* that for this reason, the *Johnson* line of cases are not persuasive because they do not read § 541(b)(7) within the larger context of § 541as a whole.

We find it is also significant that Congress placed the "disposable income" exception for voluntary retirement contributions within the confines of § 541(b)(7), rather than in Chapter 13 itself. Like the *McCullers* court, we think that "the most natural reading of section 541(b)(7) is that it excludes from property of the estate only

those contributions made before the petition date" as "indicated by its specifying the contributions excluded from property of the estate and then stating that 'such amount' shall not constitute disposable income." *McCullers*, 451 B.R. at 503-04. Furthermore, as the *McCullers* court observed, the term "except that" in the hanging paragraph was designed simply to clarify that the voluntary retirement contributions excluded from the property of the estate are not post-petition income to the debtor. *McCullers*, 451 B.R. at 504-05. Restated, the function of § 541(b)(7) was merely to clarify that pre-petition retirement contributions do not constitute property of the estate or post-petition disposable income. *See Prigge*, 441 B.R. at 677 & n.5 (citing *Collier on Bankruptcy*). Here, the BAP majority's reasoning fell short because it did not take into account the words "except that such amount" at the beginning of the hanging paragraph excluding retirement contributions from disposable income.

Similar to the analysis in *Egan*, Debtors argue that voluntary 401(k) contributions are excluded from Chapter 13 plans because § 1306(a) incorporates § 541 *in toto*, including § 541's exclusions. However, as just stated, this argument ignores § 541(b)(7)'s express relationship with § 541(a)(1), whereby only those interests in property set forth in § 541(b)(7)(A) in existence *as of the commencement* of a debtor's case are excluded from property of the estate. Only by reading § 541(a)(1) and § 541(b)(7)(A) together can sufficient meaning be given to both sections of § 541. Furthermore, if Debtors' theory that contributions to a qualified retirement plan never constitute property of a bankruptcy estate was correct, Congress would not have needed to include an additional provision in § 541(b)(7)(A) stating that such contributions are excluded from disposable income.

This distinction–between qualified retirement plan contributions in effect as of the commencement of a bankruptcy case and those cases where contributions are not in effect as of commencement–is further clarified by the phrase "under this subparagraph" found in the hanging paragraph of § 541(b)(7)(A). If all contributions to qualified retirement plans were excluded from disposable income, regardless of whether they were in effect as of the commencement of the bankruptcy case, the phrase "under this

subparagraph" would be superfluous, and § 541(b)(7) would simply read "such amount [qualified retirement plan contributions] shall not constitute disposable income as defined in section 1325(b)(2)." As it is written though, Congress intentionally limited the type of contributions to qualified retirement plans that would be excluded from disposable income, namely those "under this subparagraph", § 541(b)(7)(A), which in turn governs only those contributions in effect as of the commencement of a debtor's bankruptcy case, per § 541(a)(1).

Ultimately then, we find that the *Prigge/McCullers* interpretation is the most persuasive because it gives effect to every word in the statute. *See Penn. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 562 (1990) ("Our cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment."); *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 & n.11 (1988) (same). Although "awkward" perhaps, we conclude, based on the language and structure of Chapter 13, incorporating § 541, that Congress intended to exclude from disposable income and projected disposable income available for unsecured creditors only voluntary retirement contributions already in existence at the time the petition is filed.[7]

It is true, as Debtors assert, that BAPCPA added new protections for retirement funds that did not exist under pre-BAPCPA law, namely § 1322(f) and § 541(b)(7). There is legislative history to this effect. *See* H.R. Rep. No. 109-31, pt. 1, p. 2-3 (2005) ("S. 256 also includes various consumer protection reforms. . . . S. 256 allows debtors to shelter from the claims of creditors certain education IRA plan and retirement pension funds.").[8] On the other hand, as we recognized in *Baud*, BAPCPA's "core purpose" is to ensure that debtors devote their full disposable income to repaying creditors and

_____

[7] The Trustee "concedes" that if a debtor is making voluntary retirement contributions when the bankruptcy petition is filed, such continuing contributions may be excluded from disposable income. We do not agree with this assertion, for the reasons stated in *Prigge*. However, our view is not relevant here, because this issue is not presently before us.

[8] Notwithstanding, as the dissent in the case *sub judice* points out: "It is an unfortunate fact that there exists virtually no real legislative history for the detailed provisions of BAPCPA." 437 B.R. at 220 (citing Susan Jensen, A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 Am. Bankr. L.J. 485 (2005)).

maximizing creditor recoveries. *Baud*, 634 F.3d at 343, 356 (citing *Lanning* and *Ransom*). The legislative history supports this reading too. *See* H.R. Rep. No. 109-31, pt. 1, p. 2-3 (2005) ("The heart of the bill's consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ("needs-based bankruptcy relief" or "means testing"), which is intended to ensure that debtors repay creditors the maximum they can afford."); *Ransom*, 131 S. Ct. at 721 (stating that Congress enacted the BAPCPA "to correct perceived abuses of the bankruptcy system," and enacted the "means test" of § 707(b) in particular, "to help ensure that debtors who *can* pay creditors *do* pay them." *Ransom*, 131 S. Ct. at 721. Thus, as in *Baud*, "we adopt the interpretation of [§§541(a)(1), 541(b)(7), and 1325] that is not only more consistent with the language of the statute[s] than the competing interpretation, but that is also consistent with the legislative history and the overriding purpose of BAPCPA as recognized in *Lanning* and *Ransom*." *Baud*, 634 F.3d at 357.

In sum, for the foregoing reasons, we hold that the income made available once Debtors' 401(k) loan repayments are fully repaid is properly committed to the debtors' respective Chapter 13 plans for distribution to the unsecured creditors and may not be used to make voluntary retirement contributions.

### III.  Conclusion

Although for slightly different reasons than those provided by the BAP majority in this case, its judgment is **AFFIRMED**.