**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1034

THOMAS P. GORMAN,

       Trustee - Appellant,

    v.

RICARDO CANTU, JR., a/k/a Rick Cantu,

       Debtor - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:16-cv-01134-CMH-MSN)

Argued:  October 25, 2017               Decided:  December 18, 2017

Before DIAZ, THACKER, and HARRIS, Circuit Judges.

Affirmed by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Diaz joined.  Judge Thacker wrote a separate opinion concurring in part, and dissenting in part.

**ARGUED:**  Thomas Patrick Gorman, OFFICE OF THE CHAPTER 13 TRUSTEE, Alexandria, Virginia, for Appellant.  David R. Kuney, WHITEFORD, TAYLOR & PRESTON, LLP, Washington, D.C., for Appellee.  **ON BRIEF:**  Janet E. Boyd, JANET E. BOYD, PLC, Stafford, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

In this appeal, a Chapter 13 bankruptcy trustee challenges a debtor's plan to repay his creditors, raising two objections: first, that the plan allows the debtor to contribute to his retirement account in a bad faith attempt to shield "disposable income" from his creditors; and second, that the debtor improperly overstated his court-ordered child support and alimony payments, also excluded from the "disposable income" available to creditors. The bankruptcy court rejected both objections, finding that the retirement contributions were proposed in good faith and that the plan accurately stated the amount of family support that the debtor agreed to pay. We agree with the district court that the bankruptcy court did not clearly err in either of those findings, and accordingly, we affirm.

**I.**

**A.**

On December 31, 2015, Ricardo Cantu, Jr. (the "Debtor") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code, which governs debt adjustment for individual wage-earners. Under Chapter 13, debtors submit a repayment plan pledging all "projected disposable income" to their creditors during a multi-year commitment period. 11 U.S.C. § 1325(b)(1)–(4). If the bankruptcy court approves the plan and the debtor completes the payments, then the remaining debt is discharged and the debtor receives a fresh start. *See* 11 U.S.C. §§ 1325, 1328.

2

The Debtor, seeking to discharge $148,346 in unsecured debt, submitted a plan proposing to repay his creditors a total of $51,240 over five years. As permitted by 11 U.S.C. § 1322(f), the Debtor's plan excluded from disposable income $338 in monthly payments on two retirement loans, which the Debtor had previously taken out against his Thrift Savings Plan ("TSP"), a government-sponsored retirement account.

Thomas P. Gorman, the court-appointed Chapter 13 bankruptcy trustee (the "Trustee"), filed an objection to the plan. The Trustee contended that one of the Debtor's two retirement loans would be paid off shortly after the petition was filed, dropping the Debtor's monthly loan payments from $338 to $70 and resulting in $268 of newly available income. Because bankruptcy courts must use a "forward-looking approach" that "account[s] for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation," *Hamilton v. Lanning*, 560 U.S. 505, 517, 524 (2010), the Trustee argued that the $268 was "projected disposable income" that should be committed to creditors.

In response, the Debtor submitted an amended Chapter 13 repayment plan clarifying that once his retirement loan was repaid, he planned to contribute the extra $268 to his TSP each month. The Debtor explained that he had contributed to his TSP regularly since the year 2000, but had been suspended from making contributions as a consequence of taking out the retirement loans. *See* J.A. 224 (notice of six-month suspension). Under the amended proposal, the Debtor thus would resume TSP contributions after the suspension was lifted. The Trustee objected to the amended plan, arguing that proposed retirement contributions would deprive the Debtor's creditors of

3

"projected disposable income" to which they were entitled, and that the Debtor's decision to contribute the $268 per month to his retirement account was made in bad faith.

The Debtor separately excluded from his "disposable income" $1,625 per month in child and spousal support pursuant to 11 U.S.C. § 1325(b)(2), which permits debtors to retain income for certain "reasonably necessary" expenses, including domestic support payments. The Trustee also objected to this exclusion, arguing that a discrepancy between the $1,625 the Debtor listed on his bankruptcy forms and the $1,500 monthly payment recorded in the Debtor's state-court divorce decree demonstrates that the Debtor overstated his monthly family support obligation. *Compare* J.A. 203–05, *with* J.A. 60, 101.

### B.

After holding a hearing to consider the Trustee's arguments and the Debtor's testimony, the bankruptcy court rejected the Trustee's objections and confirmed the Debtor's amended repayment plan.

With respect to the Debtor's proposed retirement fund contributions, the bankruptcy court noted a division in authority as to whether and under what circumstances such contributions may be excluded from "disposable income" under 11 U.S.C. § 1325(b) and from the "property" of a Chapter 13 estate, as defined by 11 U.S.C. § 541(b)(7) and § 1306(a). *In re Cantu*, 553 B.R. 565, 572 (Bankr. E.D. Va. 2016). The majority approach permits debtors to exclude post-petition retirement contributions like the ones proposed by the Debtor here, subject to a showing of good faith. *See, e.g.*, *In re Vanlandingham*, 516 B.R. 628, 633 n.21 (Bankr. D. Kan. 2014) (collecting cases); *Baxter*

4

*v. Johnson (In re Johnson)*, 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006). A second, "middle" approach holds that debtors may make and exclude post-petition retirement contributions, but only in the same amount they were making at the time their petitions were filed. *See, e.g.*, *Burden v. Seafort (In re Seafort)*, 437 B.R. 204, 210 (B.A.P. 6th Cir. 2010), *aff'd on other grounds*, 669 F.3d 662 (6th Cir. 2012). And a final approach precludes debtors from excluding *any* voluntary post-petition retirement contributions from the "disposable income" committed to creditors. *See, e.g.*, *Seafort v. Burden (In re Seafort)*, 669 F.3d 662, 674 n.7 (6th Cir. 2012); *In re Prigge*, 441 B.R. 667, 677 n.5 (Bankr. D. Mont. 2010). After observing that the Fourth Circuit has not resolved this issue, the bankruptcy court adopted the majority rule, holding that debtors are permitted to exclude post-petition retirement contributions from disposable income in any legal amount, so long as the contributions are made in good faith. *In re Cantu*, 553 B.R. at 577.

The bankruptcy court next considered whether the Debtor met this good-faith requirement. The court recognized that the Debtor previously had contributed to his retirement plan, and that he was not making similar contributions when he filed for bankruptcy because he was "locked out . . . on account of the hardship loans that he had taken out pre-petition." *Id.* The court also observed that the Debtor's proposed contribution of $268 per month was "well within" the maximum annual contribution, and that the Debtor "has no other pension benefits available to him." *Id.* Based on these considerations, the court concluded that "the Debtor is proceeding in good faith" and overruled the Trustee's objection. *Id.*

5

Finally, the court upheld the Debtor's exclusion of $1,625 in family support payments. The Debtor testified that he and his former spouse entered a written agreement stating that the Debtor would pay $750 in child and spousal support "every two weeks." J.A. 169. Because the Debtor is paid 26 times per year, that comes to $19,500 per year, or $1,625 per month. The Debtor explained that the Stafford County Circuit Court formalized the terms of that agreement in a divorce decree that mistakenly stated the obligation as $1,500 per month – that is, $750 twice a month, rather than every two weeks. *Id.* The bankruptcy court found the Debtor's testimony credible and ruled that the divorce decree did not "accurately reflect the intention of the parties at the time it was entered into." J.A. 179.

Having overruled both of the Trustee's objections, the bankruptcy court confirmed the Debtor's Chapter 13 plan. The district court affirmed, finding the decision of the bankruptcy court "neither clearly erroneous nor contrary to law." J.A. 267.

This timely appeal followed.

## II.

This court reviews the judgment of a district court sitting in review of a bankruptcy court de novo. *Jacksonville Airport, Inc. v. Michkeldel, Inc.*, 434 F.3d 729, 731 (4th Cir. 2006). We review the bankruptcy court's conclusions of law de novo and its findings of fact only for clear error. *Id.*

In this case, the Trustee's challenge is limited to two of the bankruptcy court's factual findings: that the Debtor's retirement-plan contributions were proposed in good

6

faith; and that the Debtor properly excluded $1,625 rather than $1,500 in family support payments. Because neither finding is clearly erroneous, we affirm.

**A.**

As the bankruptcy court explained, courts have come to "three divergent" conclusions as to whether debtors may exclude voluntary retirement contributions from disposable income, turning largely on their differing interpretations of 11 U.S.C. § 541(b)(7), which defines the "property" of an estate in bankruptcy. *In re Cantu*, 553 B.R. at 572. This appeal, however, does not require that we resolve that statutory issue. As became clear at oral argument, the Trustee does not seek reversal on the ground that the majority approach adopted by the bankruptcy court is incorrect, or urge us to adopt some other identified standard. Instead, the Trustee argues – and the Debtor does not dispute – that a showing of good faith is a minimum requirement for exclusion of post-petition retirement contributions, and – now without the concurrence of the Debtor – that the bankruptcy court erred in its good-faith determination. *See* Appellant's Reply Br. at 1–4. So it is to that factual finding that we turn.

The Trustee argues that the confluence of several circumstances compels a finding of bad faith with respect to the proposed retirement-fund contributions. The Debtor, the Trustee urges, is only 38 years of age, has available other retirement vehicles and earns an above median income, and proposes to repay his creditors only a small percentage of his total debt. *Id.* The Trustee also emphasizes that the Debtor was not making any retirement contributions at the time he filed his Chapter 13 petition, and decided to make contributions only after the Trustee objected to his original plan and identified an extra

7

$268 in projected monthly income. *Id.* at 1–2. Based on the foregoing, the Trustee argues, the bankruptcy court clearly erred in finding good faith.

In the bankruptcy context, "a court's finding with respect to the good faith requirement . . . is reviewed for clear error." *Behrmann v. Nat'l Heritage Found., Inc.*, 663 F.3d 704, 709 (4th Cir. 2011); *accord Brown v. Gore (In re Brown)*, 742 F.3d 1309, 1315 (11th Cir. 2014) ("A bankruptcy court's determination whether a chapter 13 plan has been proposed in good faith is a finding of fact reviewable under the clearly erroneous standard.") (internal quotation marks omitted). Under this standard, "we will not reverse a bankruptcy court's factual finding that is supported by the evidence unless that finding is clearly wrong." *Gold v. First Tenn. Bank Nat'l Ass'n (In re Taneja)*, 743 F.3d 423, 429 (4th Cir. 2014).

The bankruptcy court's finding of good faith in this case is not clearly wrong. The Debtor testified that he had contributed to his retirement plan monthly since the year 2000, stopping only because he was temporarily suspended from doing so after taking out retirement loans. That the Debtor sought to resume making contributions does not demonstrate bad faith. "[W]here . . . there is a history of similar prepetition contributions, temporarily interrupted on account of a circumstance beyond a debtor's control (e.g., a limited period in which debtor could not contribute on account of a hardship withdrawal) . . . any good faith obstacle [is] overcome." *In re Drapeau*, 485 B.R. 29, 38–39 (Bankr. D. Mass. 2013). Moreover, as the bankruptcy court noted, the Debtor's proposed annual contribution of approximately $3,200 is well below the maximum allowable contribution of $18,000, and the Debtor has no other retirement

8

benefits. J.A. 135–36. The bankruptcy court's judgment that the Debtor did not use post-petition retirement contributions to opportunistically evade repaying creditors, and instead acted in good faith, is adequately supported by the record and not clearly erroneous.

## B.

The bankruptcy court likewise committed no clear error in finding that the Debtor and his former spouse agreed to make child and spousal support payments totaling $1,625 per month.[1] The Trustee argues that the bankruptcy court committed clear error because the Debtor's explanation for the amount listed in the petition – i.e., that "[the Debtor] and his ex-spouse had really intended for the monthly support to be $1,625" – is "completely unsupported by any corroborating evidence or testimony." Appellant's Reply Br. at 4. The bankruptcy court disagreed, crediting the Debtor's account and holding that "the decree of divorce . . . doesn't accurately reflect the intention of the parties at the time it was entered into." J.A. 179.

In the context of a marital settlement agreement, this court "review[s] the bankruptcy court's finding on the parties' mutual intent under the clearly erroneous standard." *Robb-Fulton v. Robb (In re Robb)*, 23 F.3d 895, 898 (4th Cir. 1994). And because the bankruptcy court's ruling was based in part on "accept[ance] [of] the debtor's

---

[1] In addition to disputing the bankruptcy court's finding on this question, the Trustee contends that the court "lacked authority" to undertake the inquiry at all, arguing, *inter alia*, that the dispute is not a "core proceeding" arising from the Debtor's bankruptcy case and that the court's holding violates the Constitution's Full Faith and Credit Clause. *See* Appellant's Br. at 21–24. We find those arguments to be without merit.

testimony," J.A. 180, it merits substantial deference. *See Farouki v. Emirates Bank Int'l*, 14 F.3d 244, 249–50 (4th Cir. 1994) ("[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.").

The Debtor testified that he and his spouse entered a Marital Settlement Agreement memorializing the parties' mutual intention that the Debtor would pay $750 in family support every two weeks, for a total of $1,625 per month. The Debtor further testified that the Stafford County Circuit Court, in a divorce decree incorporating and ratifying the Agreement, inaccurately recorded the obligation as $1,500 per month – equivalent to $750 paid twice a month, rather than biweekly. The Debtor corroborated his testimony with a previous Separation Agreement, entered into prior to the divorce decree, stating that the Debtor agrees to pay $750 "on the Saturday of each and every second week," or $1,625 per month. J.A. 216–17. Because the bankruptcy court's finding is adequately supported by this evidence, it is not clearly erroneous.[2]

---

[2] The Trustee notes that the divorce decree purports to incorporate a settlement agreement dated July 24, 2015, while the Separation Agreement in the record is dated June 5, 2015. Appellant's Br. at 10 n.1. However, the Trustee does not argue – and has never argued – that there is a material discrepancy between the two agreements, or that the parties changed their understanding as to the amount of the monthly obligation between June and July of 2015. On the contrary, the position of the Trustee is that only *after* entry of the divorce decree in *December* of 2015, and in anticipation of the Debtor's bankruptcy filing, did the parties verbally agree to increase support payments from $1,500 to $1,625 per month. *Id.* at 21–22. It is to that claim that the June 5th Separation Agreement, submitted into the record by the Debtor, responds, showing that contrary to the Trustee's account, the parties' intention that the Debtor pay $1,625 per month predates the divorce decree.

### III.

For the foregoing reasons we agree with the district court that the bankruptcy court's factual findings are not clearly erroneous.  Accordingly, we affirm.

*AFFIRMED*

THACKER, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the bankruptcy court did not clearly err in finding that Ricardo Cantu, Jr. (the "Debtor") acted in good faith throughout his bankruptcy proceedings. However, I disagree with two other aspects of the opinion. First, I believe Thomas Gorman (the "Trustee") sufficiently raised the legal statutory interpretation issue of whether debtors can exclude post-petition retirement contributions from disposable income. And, in my view, and we should address that issue. Second, I believe the bankruptcy court clearly erred in finding a "scrivener's error" and interpreting the divorce decree executed by Debtor and his wife (the "Divorce Decree") as requiring $1,625 in monthly support payments, when on its face the Divorce Decree unambiguously requires $1,500. As explained below, I would vacate the portion of the district court's decision affirming that finding, and remand for further proceedings.

I.

I disagree with the majority's statement that the Trustee's challenge is limited to two factual good faith arguments, and that we need not "resolve th[e] statutory issue." *Ante* at 7. In my view, the bankruptcy court thoroughly analyzed the *Johnson*/*Seafort*/*Prigge* statutory interpretation issue, and the Trustee properly raised it on appeal. Therefore, we should review the issue de novo.

The Trustee clearly set forth in the Argument section of its opening brief the issues of whether additional income "known to become available upon repayment of a retirement loan" is considered "projected disposable income" under 11 U.S.C. § 1325(a)(1)(B), and whether 11 U.S.C. § 541(b)(7) "entitles a debtor to divert" income

12

that becomes available after a retirement loan is repaid or whether it should be used to repay unsecured creditors. Appellant's Br. 25–47. The Trustee presented a thorough argument that the bankruptcy court incorrectly adopted the *In re Johnson* view, which allows debtors to exclude post-petition retirement contributions from disposable income. *See* Appellant's Br. 34–47; *Ante* at 4–5; *see also* Fed. R. App. P. 28(a)(8) (In the argument section of the opening brief, the appellant must provide its "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.").

The majority cites to oral argument and the Trustee's reply brief to conclude that the Trustee "does not seek reversal on the ground that the majority approach adopted by the bankruptcy court is incorrect, or urge us to adopt some other identified standard." *Ante* at 7. Rather, the majority concludes, "the Trustee argues . . . that a showing of good faith is a minimum requirement for exclusion of post-petition retirement contributions, and . . . the bankruptcy court erred in its good faith interpretation." *Id*. (citing Appellant's Reply Br. 1–4). To the contrary, at oral argument, after the court peppered counsel with questions about the confines of his argument, the Trustee took pains on rebuttal to refute the notion set forth by the majority. *See* Oral Arg. at 39:10–39:21, *Gorman v. Cantu*, No. 17-1034 (4th Cir. Oct. 25, 2017), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments ("I want to clarify . . . . I don't see this as exclus[ively] . . . a good faith analysis. That's part of it."). Moreover, the reply brief, while focusing on good faith, comes far from conceding or waiving the statutory argument. Indeed, the reply brief states, "The actual issue before

13

this Court with regards to the retirement account is *whether Congress intended* to allow debtors in bankruptcy the opportunity to enhance . . . existing retirement savings at the direct expense of those creditors whose claims are not being paid in full and will be discharged at the end of the case." Appellant's Reply Br. 1 (emphasis supplied).

Therefore, not only was the issue squarely presented, but it is also an important issue that has only been addressed by one other circuit half a decade ago. *See Seafort v. Burden (In re Seafort)*, 669 F.3d 662 (6th Cir. 2012). I regret that we will miss a chance to weigh in on an important statutory interpretation issue, which likely affects thousands of retirees and current and potential debtors in the Fourth Circuit. *See* Appellee's Br. 41; *see also* Tara Twomey & Todd F. Maynes, *Protecting Nest Eggs and Other Retirement Benefits in Bankruptcy*, 90 Am. Bankr. L.J. 235, 241 (2016).

II.

Next, I would vacate the portion of the district court's judgment adopting the bankruptcy court's factual finding that Debtor's monthly support payments were actually $1,625. *See ante* at 9–10. Chapter 13 of the bankruptcy code allows for a deduction from disposable income for "[c]ourt-ordered payments," which is defined as "[t]he total monthly amount [paid] as *required by the order of a court* or administrative agency, such as spousal or child support payments." Line 19, Official Form 122C-2, *Calculation of Your Disposable Income*, http://www.uscourts.gov/sites/default/files/form_b122c-2.pdf (April 2016) (saved as PDF opinion attachment) (emphasis supplied); *see* 11 U.S.C. § 1325(b)(2).

14

In support of the Debtor's claimed $1,625 deduction, he submitted a separation agreement ("Separation Agreement") dated June 5, 2015, wherein he and his wife agreed that he would contribute $550 for alimony and $200 for child support from each biweekly paycheck. Because he received 26 paychecks per year, he claims the amount should have resulted in $1,625 per month ($750 x 26 / 12 = $1,625). The Divorce Decree, however, reflected a $1,500 monthly payment. Crucially, the Divorce Decree is the only relevant court order in this record, it was executed *after* the Separation Agreement, and it did not incorporate the Separation Agreement. Rather, the Divorce Decree incorporated a separate "Marital Settlement Agreement" executed on July 24, 2015, which is not in the appendix here, nor was it presented to the bankruptcy or district courts. J.A. 203.

The majority posits that it is a bankruptcy court's obligation to interpret contractual intent, and I agree that contract interpretation is part of the bankruptcy court's "core proceeding" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(L) ("Bankruptcy judges may hear and determine . . . all [Title 11] core proceedings," which include "confirmations of plans"); *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986) (conducting an "examination of a written agreement as persuasive evidence of intent" as to whether debts were in the "nature of" alimony, maintenance, or support in Chapter 11 proceeding); *In re Lowenschuss*, 170 F.3d 923, 930 (9th Cir. 1999) (interpreting divorce decree to determine "divorce court's intent").

I am bewildered as to how the bankruptcy court, without the benefit of the July 24, 2015 agreement, could have found a "scrivener's error." J.A. 179. When bankruptcy courts interpret contracts, they are charged with applying the appropriate state law. *See*

15

*In re Merritt Dredging Co., Inc*., 839 F.2d 203, 205 (4th Cir. 1988) ("The determination of property rights in the assets of a bankrupt's estate is generally a matter of state law."). Under Virginia law, "Scrivener's errors are those which are demonstrably contradicted by all other documents." *Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co.*, 621 S.E.2d 114, 119 (Va. 2005) (internal quotation marks omitted). The only court order before the bankruptcy court was the Divorce Decree, which unambiguously stated that Debtor's support payment was $1,500 per month. Crucially, the June 5 document, upon which the bankruptcy court relied to support the purported "scrivener's error," was an earlier contract not incorporated into the Divorce Decree, and the July 24 document is nowhere to be found. How, then, can the bankruptcy court have considered "all other documents"? And how could it have determined that a document not in the record "demonstrably contradict[s]" the only court order before it?

Instead, the bankruptcy court relied on the oral testimony of the Debtor himself and explained, "[I]t is highly unlikely . . . that the payee spouse would go to court to complain that she was receiving more than is reflected in the divorce decree, and it is equally unlikely that the payor spouse would be held in contempt for paying more than what the divorce decree requires." *Id*. at 179–80. But this type of soothsaying has no support in the face of the plain language of the contract. *See Bentley Funding Grp., L.L.C. v. SK & R Grp., L.L.C*., 609 S.E.2d 49, 56 (Va. 2005) ("It is the function of the court to construe the contract made by the parties, not to alter the contract they have made so as to conform it to the court's notion of the contract they should have made in

16

view of the subject matter and the surrounding facts and circumstances." (alteration and internal quotation marks omitted)).

Moreover, under Virginia law, "[j]udgments and decrees are contracts of the highest order and especially is this so when entered by consent of the parties." *Higgins v. McFarland*, 86 S.E.2d 168, 172 (Va. 1955). The Divorce Decree, which states that Debtor would pay "$1,110 per month" in child support and "$400 per month" for spousal maintenance, was signed by both Debtor and his ex-wife. J.A. 203, 205, 207.

For these reasons, I would vacate the portion of the bankruptcy's decision regarding the support payments and remand for further proceedings. I cannot join the majority's affirmance of the finding that the Divorce Decree contains a scrivener's error when that finding was based on speculation and an unincorporated document that is not a court order.